No. 24-1854

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

IN RE LADONNA HUMPHREY,
*Debtor.*

_____

LADONNA HUMPHREY
*Debtor-Appellee,*
— v. —
ANTHONY CHRISTOPHER AND
ABSOLUTE PEDIATRIC THERAPY
*Appellants.*

On Appeal from the U.S. District Court for the Western District of Arkansas
Case No. 5:20-cv-5048-PKH
Honorable P.K. Holmes, Judge Presiding

**BRIEF OF *AMICI CURIAE* NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS AND NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER IN SUPPORT OF APPELLEE AND FOR AFFIRMANCE OF THE DECISION BELOW**

James J. Haller #42003
586 N. First Street #202
San Jose, CA 95112
(618) 420-1568
jhaller@hallerlawgroup.com
COUNSEL FOR THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS, AND THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, *AMICI CURIAE*

Allan L. Gropper, Of Counsel                    October 29, 2024

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Humphrey v. Christopher,* No. 22-6009

Pursuant to FRAP 26.1 and Eighth Circuit Local Rule 26.1A, Amici Curiae, the National Association of Consumer Bankruptcy Attorneys and the National Consumer Bankruptcy Rights Center, make the following disclosure:

1) Is party/amicus a publicly held corporation or other publicly held entity?  **NO**

2) Does party/amicus have any parent corporations?  **NO**

3) Is 10% or more of the stock of party/amicus owned by a publicly held corporation or other publicly held entity?  **NO**

4) Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  **NO**

This 29th day of October, 2024.

*/s/ James J. Haller*
James J. Haller
Attorney for Amici Curiae

ii

# **TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF AUTHORITIES................................................................... iv

INTEREST OF *AMICI CURIAE* ...........................................................1

STATEMENT UNDER FED. R. APP. P. 29(c)(5)......................................2

SUMMARY OF ARGUMENT................................................................3

THE DECISION OF THE DISTRICT COURT ..........................................4

ARGUMENT .....................................................................................8

    The District Court correctly reversed the Bankruptcy Court's improvident and
improper approval of the sale of a personal right of the debtor that
was not property of the bankruptcy estate..........................................8

CONCLUSION .................................................................................20

CERTIFICATE OF COMPLIANCE .......................................................21

CERTIFICATE OF SERVICE ..............................................................22

Appellate Case: 24-1854    Page: 3    Date Filed: 11/14/2024 Entry ID: 5456775

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                         **Page(s)**

*Bartenwerfer v. Buckley*
    598 U.S. 69, 72 (2023) ...................................................................... 13

*Bouzaglou v. Haworth* (*In re Bouzaglou*),
    803 F. App'x 147 (9th Cir. 2020) ........................................ 16, 17, 18

*Butner v. United States*,
    440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) ...................... 5, 9

*Croft v. Lowry* (*In re Croft*),
    737 F.3d 372 (5th Cir. 2013) ...................................... 6, 13, 16

*Delannoy v. Woodlawn Colonial, L.P.* (*In re Delannoy*),
    833 F. App'x 116 (9th Cir. 2020) ........................................ 18

*Goetz v. Weber* (*In re Goetz*),
    95 F.4th 584 (8th Cir. 2024) ............................................ 13

*In re Graven*,
    936 F.2d 378 (8th Cir. 1991) ........................................ 11, 12

*Griffin v. Illinois*,
    351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 2d 891 (1956) .................... 18

*Grogan v. Garner*,
    498 U.S. 279, 111 S. Ct. 654 (1991) ............................ 11, 12, 16

*Heiser v. Woodruff*,
    327 U.S. 726, 66 S. Ct. 853, 90 L. Ed. 970 (1946) .................. 15, 16

*Kelleran v. Andrijevic*,
    825 F.2d 692 (2d Cir. 1987) ............................................ 15

*LaBarge v. Vierkant* (*In re Vierkant*),
    240 B.R. 317 (1999) .................................................... 10

*Local Loan Co. v. Hunt*
    292 U.S. 234, 244 (1934) ............................................... 12

iv

*In re Laing*,
  945 F.2d 354 (10th Cir. 1991) ........................................................... 15

*MOAC Mall Holdings L.L.C. v. Transform Holdco L.L.C.*,
  598 U.S. 288 (2023) ...................................................................... 7, 8

*In re Morales*,
  403 B.R. 629 (Bankr. N.D. Iowa 2009) ........................................... 19

*Mozer v. Goldman  (In re Mozer)*,
  302 B.R. 892 (C.D. Cal. 2003) ................................................... 6, 17

*N.S. Garrott & Sons v. N.S. Garrott & Sons  (In re N.S. Garrott & Sons )*,
  772 F.2d 462 (8th Cir. 1985) ........................................... 4, 5, 6, 9, 10

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) ..................................................................... 10, 11

*Soares v. Brockton Credit Union (In re Soares),*
  107 F.3d 969, 975 (1st Cir. 1997) .................................................. 10

*Strayhorn v. Wyeth Pharms., Inc.*,
  737 F.3d 378 (6th Cir. 2013) ......................................................... 16

**Federal Statutes**

11 U.S.C. § 362 ........................................................................... 11

11 U.S.C. § 363(m) ................................................................... 7, 8

11 U.S.C. § 507(a)(1)(A) ............................................................ 14

11 U.S.C. § 522 ........................................................................... 17

11 U.S.C. § 522(d)(11)(B), (D), (E) ............................................ 17

11 U.S.C. § 523(a)(5) ................................................................. 14

11 U.S.C. § 525(b), (c) ............................................................... 12

11 U.S.C. § 541 .............................................................. 5, 8, 9, 10, 18

11 U.S.C. § 1322(d) ................................................................... 13

v

**State Cases**

*Butwinick v. Hepner*,
 128 Nev. 718, 291 P.3d 119 (2012) .................................................................. 19

Appellate Case: 24-1854    Page: 6    Date Filed: 11/14/2024 Entry ID: 5456775

# INTEREST OF *AMICI CURIAE*

Incorporated in 1992, the National Association of Consumer Bankruptcy Attorneys ("NACBA") is a non-profit organization of more than 1500 consumer bankruptcy attorneys nationwide. NACBA's corporate purposes include education of the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process. Additionally, NACBA advocates nationally on issues that cannot be adequately addressed by individual members. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors.

The National Consumer Bankruptcy Rights Center is a non-profit organization dedicated to protecting the integrity of the bankruptcy system and preserving the rights of consumer bankruptcy debtors. To those ends it provides assistance to consumer debtors and their counsel in cases likely to impact consumer bankruptcy law importantly. Among other things, it submits amicus curiae briefs when in its view resolution of a particular case may affect consumer debtors throughout the country, so that the larger legal effects of courts' decisions will not depend solely on the parties directly involved in the case. The Center also strives to influence the national conversation on bankruptcy laws and debtors'

1

rights by increasing public awareness of and media attention to the important issues involved in bankruptcy proceedings.

NCBRC and NACBA's members have a strong interest in the outcome of this case, as the result may have a broad impact on the rights of consumers throughout the nation. A decision by this Circuit Court reversing the District Court and reinstating the result in the bankruptcy court will encourage trustees throughout the nation to hamper the legitimate interests of debtors and, under the circumstances of a case like this, reward themselves at the expense of not only the debtor but also the general creditors of the estate.

The Appellee consents to the filing of this brief, but Appellant does not consent. NACBA and NCBRC are filing a Motion for Leave to File Amici Curiae Brief contemporaneously with this brief.

## STATEMENT UNDER FED. R. APP. P. 29(c)(5)

No party's counsel authored this amici curiae brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person, other than the amici curiae, their members, or their counsel, contributed money that was intended to fund preparing or submitting this brief.

2

## SUMMARY OF ARGUMENT

The order of the District Court should be affirmed.  The District Court correctly reversed the Bankruptcy Court's improvident and improper approval of the sale of a personal right of the debtor that was not property of the bankruptcy estate.  The District Court correctly construed relevant Arkansas law and the Bankruptcy Code and found that, under the circumstances here, the bankruptcy court erred in approving a sale of the debtor's defensive appellate rights to the one party with an interest in paying to eliminate those rights – the adverse party on the appeal.  The District Court correctly questioned whether such rights should ever be considered property of the bankruptcy estate – at least in a state like Arkansas with no authority indicating that such rights are property -- and it correctly found that in any event the Bankruptcy Court had abused its discretion when it approved the sale.

Reversal of the District Court and reinstatement of the result in the Bankruptcy Court would create a rule in this Circuit that would make the filing of a bankruptcy petition a hazardous and futile endeavor for many individuals and one that Congress could not have intended.  Rather than obtaining relief from the demands of their creditors and a fresh start, debtors would find that creditors have

3

a new weapon against them.   Trustees would be encouraged to sell debtors' rights and interests for a minor benefit to them -- and often no benefit to the estate's creditors -- but in derogation of the text and fundamental purposes of the Bankruptcy Code.[1]

## THE DECISION OF THE DISTRICT COURT

Appellants take scant notice of the District Court's decision, pretending that since this Court reviews the Bankruptcy Court *de novo,* the District Court decision should be ignored.  *De novo* review, however, does not mean that the one careful, comprehensive analysis of the facts and the law in this record should be ignored by the second appellate court.

We submit that this Court should find the District Court's decision was not only careful and thoughtful but also correct, as far as it went.  The District Court first cited this Court's decision in *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462 (8th Cir. 1985), where

---

[1] The minimal or nonexistent benefit to creditors is well-illustrated in this case.  If the Bankruptcy Court's decision is reinstated, it is likely the entire estate, including the amount paid for Humphrey's rights, will be consumed by administrative expenses of the trustee.  Because of their huge judgment against the debtor and their resulting claim in the bankruptcy, if there are any funds not used for administrative expenses, creditors other than appellants would receive at most a tiny fraction of 1% on their claims -- if even that -- because Federal Rule of Bankruptcy Procedure 3010 excludes very small distributions to creditors.

4

this Court identified two determinations that are critical in deciding whether a right is "property of the estate" within the meaning of 11 U.S.C. § 541: first, since "the nature and extent of the debtor's interest in property are determined by state law", state law may be determinative, but that, second, "once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." *N.S. Garrott & Sons*, 772 F.2d at 466.[2]

Proceeding to the specified determination under the facts of this case, the District Court then continued, "it is a much more nuanced question whether and to what extent Arkansas law recognizes the right of appeal to be a cause of action that is personal property." The Court carefully perused relevant Arkansas law to determine to what extent the debtor's right to appeal – her defensive rights as opposed to her counterclaim seeking damages – would be considered a property

---

[2] This Court said: "Our inquiry must begin with state law for the Bankruptcy Code does not provide rules for deciding whether a debtor has an interest in any particular property. 4 Collier on Bankruptcy ¶ 541.02[1] (L. King 15 ed. 1985). The nature and extent of the debtor's interest in property are determined by state law. *Id.* Property rights under 11 U.S.C. § 541 are defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979). However, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate."

5

right. Referring to the available Arkansas law and other authority, the District

Court concluded:

> "Clearly, defending oneself against a lawsuit brought by another is not
> "bringing an action" or attempting to "recover a debt or money" or
> attempting to "procure the payment of a sum of money." The undersigned is
> unable to find any Arkansas cases disputing this common-sense notion.
> Thus, under Arkansas law, Ms. Humphrey's right to defend herself against
> the lawsuit that was brought against her is not personal property, but the
> causes of action she asserted in her counterclaim are personal property."

Having made the first determination mandated by *N.S. Garrott,* the District

Court proceeded to the second, finding scant case law discussing whether

defensive appellate rights should be deemed property of the bankruptcy estate. It

identified two cases, *In re Croft,* 737 F.3d 372 (5th Cir. 2013) (discussing Texas

law), and *In re Mozer,* 302 B.R. 892 (C.D. Cal. 2003) (discussing California law),

but concluded, "None of those cases is helpful here, because all such cases

involved states under whose law defensive appellate rights are personal property."

There was no clear Arkansas rule on point, it had already held, and the Court

ultimately concluded it "need not decide whether Ms. Humphrey's defensive

appellate rights are included in the bankruptcy estate, because even if they are, the

bankruptcy court clearly abused its discretion in approving their sale to Absolute."

Noting that a sale in a bankruptcy case must be "fair and equitable and in the best

6

interests of the estate," the Court concluded that instant sale of the debtor's appellate rights for a nominal sum was none of these things.  Observing that the debtor's attorney would not charge a fee for pursuing the appeal and would charge actual costs only, the District Court found that

> The Trustee had a choice between, on the one hand, pursuing an appeal at no cost to the estate of a $3,570,977.88 judgment against Ms. Humphrey – an appeal which had the potential, however small, of removing the entire liability from the estate's books; or on the other hand, effectively guaranteeing that the estate would include a non-dischargeable debt of $3,558,477.88.  The Trustee opted for, and the bankruptcy court approved, the latter course.  This cannot possibly have been in the best interest of the estate.

The Court also correctly rejected two arguments that the appellants repeat here:  first, it found that the debtor had adequately objected to the result below, but "given the enormous sum at stake and the extremely one-sided nature of this settlement, allowing this sale to stand 'would be a plain miscarriage of justice,' such that Ms. Humphrey would be permitted to challenge the reasonableness of the settlement for the first time on appeal";  second, it found that the appeal  was not barred by the "finality rule" of 11 U.S.C. § 363(m) in that "the sale can easily be undone without prejudice to any party."[3]  *See MOAC Mall Holdings L.L.C. v.*

---

[3] 11 U.S.C. § 363(m) provides:  "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or

7

*Transform Holdco L.L.C.*, 598 U.S. 288 (2023), where the Supreme Court recently held unanimously that 11 U.S.C. § 363(m) is not a jurisdictional provision that would deprive the Court of the ability to take appropriate corrective action in a case like this.

## **ARGUMENT**

**The District Court correctly reversed the Bankruptcy Court's improvident and improper approval of the sale of a personal right of the debtor that was not property of the bankruptcy estate.**

*Amici* submit this brief because of the importance of the principal issue in this case – whether the right of an individual debtor to appeal an adverse court decision is property of the bankruptcy estate within the meaning of 11 U.S.C. § 541 so that a trustee can sell it to the adverse party in the litigation. We submit that the District Court was correct in concluding that this issue requires consideration of an individual debtor's rights as well as the interests of a bankruptcy trustee in maximizing the estate (and obtaining a fee).

Property of the bankruptcy estate is broadly defined in 11 U.S.C. § 541(a) as "all of the following property, wherever located and by whomsoever held" of a

---

property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

8

variety of types listed in that subsection, including "all legal and equitable interests in property." However, neither section 541 nor any other provision of the Bankruptcy Code defines the word "property."

Many courts cite a statement in *Butner v. United States,* <u>440 U.S. 48, 55</u>, <u>99 S. Ct. 914</u>, <u>59 L.Ed.2d 136</u> (1979), that "[p]roperty interests are created as defined by state law." However, *Butner* did not decide whether the interests in question in that case were "property." The issue in *Butner* was whether a mortgage interest, which all parties agreed was property, included future rents and profits. *Butner* held only that the extent of the debtor's property interest should be determined based on state law. The Supreme Court in *Butner* also said, importantly, "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.*

In a case like this, we submit that there are critical "federal interests" that require "a different result" even if a right or interest might be categorized as property under applicable state law. We also submit that this Court's decision in *NS Garrott & Sons,* discussed above, pointed in this direction when it observed that two questions must be answered before a right or interest can be considered property of the estate under section 541 – first, is it property under applicable state law; second,

9

is there a federal interest that requires a different result. *N.S. Garrott & Sons*, <u>772 F.2d at 466</u>.

The District Court below was doubtful that the applicable law of Arkansas would consider defensive appellate rights "property" but in the absence of any specific Arkansas authority did not reach the issue. It also did not reach the issue of the federal interests at stake. If this Court is inclined to reach the latter issue, we submit that important federal interests, embedded in the Bankruptcy Code, direct that defensive appellate rights should not be considered property of the estate within the meaning of section 541.

First, it goes without saying that "The automatic stay is among the most basic of debtor protections under bankruptcy law." *LaBarge v. Vierkant (In re Vierkant),* <u>240 B.R. 317, 320</u> (B.A.P. 8th Cir. 1999), quoting *Soares v. Brockton Credit Union (In re Soares),* <u>107 F.3d 969, 975</u> (1st Cir. 1997). Indeed, a bankruptcy filing may provide a debtor with a stay of enforcement of an adverse state judgment where the debtor cannot obtain a stay under applicable state law. There is nothing questionable about this. In the words of Justice Brennan, concurring in *Pennzoil Co. v. Texaco, Inc.*, <u>481 U.S. 1, 22</u> (1987), involving an $11 billion adverse judgment that Texaco could not bond and therefore could not stay on appeal, "… in this case, Texaco clearly could exercise its right to appeal in order

10

to protect its corporate interests even if it were forced to file for bankruptcy under Chapter 11. 11 U.S.C. § 362." Texaco did in fact file in bankruptcy and stayed enforcement of the judgment in favor of Pennzoil, and it managed to settle the claim for a fraction of the judgment and preserve its business as a going concern.

If the Bankruptcy Court decision below were reinstated and the trustee's tactic in this case authorized, a bankruptcy filing would be an exceedingly dangerous endeavor for any debtor with an adverse judgment, as it would allow the adverse party to buy up the debtor's appellate rights and end the appeal. Far from providing a respite from creditors' claims, under appellants' construction, the Bankruptcy Code would provide creditors with a new weapon against debtors seeking their day in court. We submit that there is a strong federal interest in discouraging any such tactic.

It is also well recognized that "The purpose of the bankruptcy code is to provide a 'fresh start' for insolvent debtors." *In re Graven,* 936 F.2d 378, 385 (8th Cir. 1991), citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991), where the Supreme Court said, "This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and 'enjoy a new opportunity in life with a

11

clear field for future effort, unhampered by the pressure and discouragement of preexisting debt'", quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244 (1934).

Under the Bankruptcy Court's decision, the debtor had a fixed debt of $3,558,477.88, a debt that the Court also found nondischargeable. Far from receiving a fresh start, under the Bankruptcy Court's decision, she would have to live for the rest of her life with the burden of a multimillion-dollar judgment as well as the knowledge that she was never able to obtain a decision on her appeal of that adverse judgment, unlike any other appellant. We recognize that both *Grogan v. Garner* and *Graven* deny the benefits of the Bankruptcy Code, including the fresh start, to a debtor who has been guilty of fraud. However, this debtor has not been found guilty of fraud – certainly not the type of conduct described in *Graven* -- and in any event is trying to appeal the findings against her. The courts should not allow appellants to cut off the debtor's appeal rights regarding the very findings they are using against her.

The Bankruptcy Code is replete with other protections for individual debtors. In addition to the automatic stay and the fresh start providing for the discharge of most debts, individual debtors are protected against discrimination (11 U.S.C. §§ 525(b), (c)) and unlimited servitude to their creditors (11 U.S.C. §

12

1322(d)),[4] to name only two.  The Bankruptcy Code is carefully calibrated to balance the rights of creditors and debtors.  *See Goetz v. Weber* (*In re Goetz*), 95 F.4th 584, 591 (8th Cir. 2024) (quoting *Bartenwerfer v. Buckley*, 598 U.S. 69, 72 (2023)) ("The Code's values are not monolithic. '[It] strikes a balance between the interests of insolvent debtors and their creditors.'").  We submit that the drafters of the Code did not balance the scales in a manner that provides creditors with a weapon to wipe out debtors' rights of appeal.

The District Court identified two cases on point, one based on Texas law and one based on California law, and it found neither helpful because "all such cases involved states under whose law defensive appellate rights are personal property." We submit that both cases also have other factors that make them inapplicable here.  *In re Croft,* 737 F.3d 372 (5ᵗʰ Cir. 2013), was a *per curiam* decision of the Fifth Circuit involving the law of Texas.  The Court, citing Texas' "broad definition of property as including every species of valuable right and interest," found that the right to appeal "certainly has a quantifiable *value* to the debtor, and therefore constitutes property under Texas law." 737 F.3d at 376-77.

---

[4] The length of a chapter 13 repayment plan, during which a debtor must apply all "disposable income" to creditors' claims, cannot exceed five years.

Appellate Case: 24-1854     Page: 19     Date Filed: 11/14/2024 Entry ID: 5456775

We submit that, at least in the absence of such a statute, the fact that a right or thing has quantifiable monetary value is not sufficient, by itself, to constitute it "property of the estate." Just as no one would argue that a debtor's kidney should be property of the estate because it may have monetary value if put up for sale on the market, it is not difficult to find many examples of situations in which classifying a right to appeal as property, simply because a trustee could sell it for monetary gain, would be extremely problematic. A debtor could be involved in a hotly contested custody case, where a decision was appealed. The opposing party, perhaps far wealthier than the debtor, could offer to buy the debtor's right to appeal and offer more than the debtor could afford, thus ending the appeal. Similarly, a debtor could be involved in a contested divorce, in which the state court had entered an enormous support order against the debtor that would be a priority claim as well as nondischargeable in bankruptcy. In that situation, too, the opposing party could offer the trustee a small settlement to cut off any review and leave the other creditors of the estate with claims subordinated to a huge priority claim and the debtor with a lifelong nondischargeable burden. 11 U.S.C. § 507(a)(1)(A) (domestic support obligation is first priority claim); 11 U.S.C. § 523(a)(5) (nondischargeable).

Appellate Case: 24-1854    Page: 20    Date Filed: 11/14/2024 Entry ID: 5456775

Such situations are not limited to family law matters. A debtor could be appealing a criminal conviction. The alleged crime victim, or even a prosecutor trying to avoid the costs of appeal, could purchase the debtor's right to appeal, perhaps causing the debtor to be imprisoned for years. Or the debtor might be appealing an erroneous judgment or other decision that would lead to loss of a professional license, which would severely impair the debtor's fresh start.

The loss of a debtor's right to appeal could also lead, as here, not only to a large obligation becoming nondischargeable but also to its being binding in amount as a matter of law. A bankruptcy court has no authority to review the size or correctness of a state judgment, even a default judgment, in the absence of a claim that the judgment was the result of fraud or collusion. *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007 (1988); *In re Laing*, 945 F.2d 354 (10th Cir. 1991). These cases are consistent with the Supreme Court's decision in *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S. Ct. 853, 857-58, 90 L. Ed. 970 (1946), where the Court said,

> Undoubtedly, since the bankruptcy act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. But it is quite another matter to say that the bankruptcy court may

15

reexamine the issues determined by the judgment itself. It has, from an early date, been held to the contrary. Nor can an attack be sustained on a judgment allegedly procured by fraudulent representations of the plaintiff, when the charge of fraud has been rejected in previous litigations by the parties to the suit in which the judgment was rendered, or their representatives.

*Heiser v. Woodruff* was itself based on the principle of *res judicata* or claim preclusion.  It is also clear that collateral estoppel or issue preclusion applies where the state court has found facts that bear on an issue that arises in the bankruptcy case and that the doctrine of collateral estoppel may prevent the debtor from obtaining a new hearing on the issue of dischargeability in bankruptcy.  *See Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654 (1991); *Bouzaglou v. Haworth* (*In re Bouzaglou*), 803 F. App'x 147 (9th Cir. 2020), further discussed below.  The Court in *Croft* said that the debtor could still object to the claim against the estate,[5] but we respectfully suggest that a debtor is ordinarily precluded from getting a second bite at the apple.  The only way to obtain review is to appeal, which the Bankruptcy Court decision allows an adverse party to purchase.

*In re Croft* did recognize that there might be relevant fairness issues.  It pointedly said, near the conclusion of the *per curiam* decision, that "Croft has

---

[5] "Nothing in the sale of the appellate right indicates that the estate will not be able to challenge the sufficiency of the creditors' proofs."  *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 378 (6th Cir. 2013).

16

presented no arguments demonstrating why losing defensive appellate rights would create a greater injustice than losing cause-of-action appellate rights." 737 F.3d at 378. We respectfully submit that in construing the intent of Congress in drafting the Bankruptcy Code, the issue should not be "the greater injustice." There can be no question that Congress included in "property of the estate" rights pursued in lawsuits seeking damages, even damages for personal injuries, if only because Congress has also permitted a debtor to exempt a portion of those damages. 11 U.S.C. §§ 522(d)(11)(B), (D), and (E).[6] A sale of defensive appellate rights, on the other hand, involves an effort on behalf of the debtor to reduce or preclude damages. To deem such rights "property of the estate" undermines so many of the other protections embedded in the Bankruptcy Code that Congress could not have intended its inclusion in the term "property of the estate."

The one other case that the District Court found on point was *In re Mozer,* 302 B.R. 892 (C.D. Cal. 2003), and it found the case unhelpful because it discussed California law where, like Texas, "defensive appellate rights are personal property." California law was also deemed determinative in the non-precedential

---

[6] A debtor may, and in some states must, use state exemptions, which may be higher or lower than the federal exemptions depending on state law. 11 U.S.C. § 522(b)(3)(A).

17

decision in *Bouzaglou v. Haworth (In re Bouzaglou),* 803 Fed App'x 147 (9ᵗʰ Cir.

2020), where the Court simply assumed that "legal interests are considered

property of a debtor's estate," citing only 11 U.S.C. § 541(a)(1);[7] and another

California non-precedential decision, *Delannoy v. Woodlawn Colonial, L.P.* (*In re*

*Delannoy*), 833 F. App'x 116 (9th Cir. 2020), where the Court similarly assumed

without analysis that property rights include the right to appeal.

   We note that the California cases consider whether the debtor's appeal had a

strong or weak likelihood of success. We submit this is a weak and uncertain reed

on which to base a decision whether a right to appeal should be considered

property of the estate and that Congress could not have intended that courts rest a

decision on any such determination. It is well-established that if a right to appeal

is granted, it cannot be unconstitutionally burdened. *Griffin v. Illinois*, 351 U.S.

12, 18, 76 S. Ct. 585, 100 L. Ed. 2d 891 (1956). To allow a debtor's appeal rights

---

[7] The summary decision also contains two other statements that, we submit, are in
error. First, it said, "Bouzaglou chose to file for bankruptcy, thereby voluntarily
relinquishing his personal right to appeal." We submit that relinquishment of all
appeal rights would be an extraordinary, unanticipated, and unjust consequence of
a bankruptcy filing. The other extraordinary conclusion of the Court's summary
memorandum decision is that there was no unfairness to Bouzaglou because his
co-defendant in the state litigation did appeal and was unsuccessful.

to be lost on a bankruptcy judge's determination that the appeal of his/her decision did not have a good chance of success anyway would be just such a burden.

The Court in *In re Morales*, <u>403 B.R. 629</u> (Bankr. N.D. Iowa 2009), got it right. There, on a motion by the debtor for relief from the stay to continue her appeal of a judgment against her, the Court held that defensive appellate rights were not "property" under applicable Iowa law but continued:

> Even if it were, I would conclude that it is not property of the estate. After bankruptcy is filed, a debtor, if he or she has a pecuniary interest in the outcome, has a right to object to a claim. Morales still may have a pecuniary interest in her case. If the trustee, by compromise or sale, can dispose of her appeal of the judgment against her by treating it as a claim against the appellee, it would effectively destroy any right to object to the claim. No trustee has ever before attempted to sell or to compromise a debtor's right or potential right to object to creditor's claim. I know of no case law that would treat such a right as property of the estate."
> *Id.* at 633-34.

We respectfully submit that this case is correct on all fronts. *See also Butwinick v. Hepner*, <u>128 Nev. 718</u>, <u>291 P.3d 119</u> (2012), a non-bankruptcy case, where the Nevada Supreme Court held that a party that had foreclosed on a judgment at an execution sale did not thereby acquire the debtor's defensive appellate rights in the underlying action.

19

If this Court is inclined to reach the important issues present in this case, we respectfully request that it give appropriate weight to the federal issues discussed above in determining that defensive appellate rights are not property of the estate merely because they may have value to the adverse party on the appeal.

## **CONCLUSION**

The order of the District Court should in all events be affirmed.

Respectfully submitted,

<u>/s/ James J. Haller</u>
James J. Haller
586 N. First Street #202
San Jose, CA 95112
(618) 420-1568
COUNSEL FOR THE NATIONAL ASSOC. OF CONSUMER BANKRUPTCY ATTORNEYS, AND THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, *AMICI CURIAE*

Allan L. Gropper, Of Counsel

20

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,240 words, excluding parts exempted by Fed. R. App. P. 32(f).

2.  This filing complies with Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point type.

3.  This brief has been scanned for viruses pursuant to Rule 27(h)(2).

 /s/ James J. Haller
James J. Haller
Attorney for *Amici Curiae*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on October 29, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ James J. Haller*

James J. Haller
Attorney for *Amici Curiae*

22