# NO. 24-1854

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

*(In re: LaDONNA HUMPHREY, Debtor)*

| | |
|---|---|
| LADONNA HUMPHREY | APPELLEE |
| v. | |
| ANTHONY CHRISTOPHER and | |
| ABSOLUTE PEDIATRIC THERAPY | APPELLANTS |

On Appeal From
United States District Court for the Western District of Arkansas

Hon. P.K. Holmes, III, Presiding Judge

## REPLY BRIEF OF APPELLANTS

Submitted by:

Charles T. Coleman (80030)
Glenn S. Ritter (2011146)
Troy A. Price (88010)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
ccoleman@wlj.com
gritter@wlj.com
tprice@wlj.com
*Attorneys for Anthony Christopher and
Absolute Pediatric Therapy*

3239577-v1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ........................................................................................... 1

    I.    **As a matter of law, the bankruptcy court did not err in concluding that all of Humphrey's state court appellate rights were property of the estate under 11 U.S.C. § 541, as informed by Arkansas law.** ................................................. 1

    II.   **The Bankruptcy Court did not abuse its discretion in concluding that the sale of state court appellate rights was in the best interests of the estate.** ...................................................... 10

   III.  **The finality rule of 11 U.S.C. § 363(m) barred any appellate challenge to the sale of estate property where the debtor failed to obtain a stay of the bankruptcy court order and the sale was consummated before any appeal could be decided.** ............................................................. 11

CONCLUSION ..................................................................................... 13

CERTIFICATE OF COMPLIANCE ...................................................... 15

CERTIFICATE OF SERVICE ............................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Compute-A-Call v. Tolleson*, 285 Ark. 355, 687 S.W.2d 129 (1985) ..................................................................................................2

*Curtis Lbr. Co., Inc. v. Louisiana Pac. Corp.* 618 F.3d 762 (8th Cir. 2010) ......................................................................................4

*Gazaway v. Greene Cty Equalization Bd.*, 314 Ark. 569, 864 S.W.2d 233 (1993)..........................................................................1

*Gregory v. Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963)....................2, 3

*Grogan v. Garner*, 498 U.S. 279 (1991).......................................................8

*International Union, United Auto, Aerospace & Ag. Implement Workers v. Morse Tool, Inc.*, 85 B.R. 666 (D. Mass. 1988).................................................................................12

*MOAC Mall Holdings L.L.C. v. Transform Holdco L.L.C.*, 598 U.S. 288 (2023) .................................................................................12

*N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462 (8th Cir. 1985) ....................................................................................7

*Pruitt v. State*, 8 Ark. App. 350, 652 S.W.2d 51 (1983) ..........................2

*Von Kerssenbrock Praschma v. Saunders*, 121 F.3d 373 (8th Cir.1997)..........................................................................................5

*Windsor on the River Associates, Ltd.*, 7 F.3d 127 (8th Cir. 1993) ...............................................................................................12

*Worth v. City of Rogers*, 351 Ark 183, 89 S.W.3d 875 (2002) ...................3

**Statutes**

11 U.S.C. § 363(m)............................................................................... 11, 12

11 U.S.C. § 523(a)(6)..................................................................................8, 9

11 U.S.C. 541(a)(1) .........................................................................................7

Ark. Code Ann. § 16-111-101 *et seq.* ...........................................................3

**Other Authorities**

73 *CJS* Property § 12, *Choses in Action* ......................................................4

Ark. Const. Art. 16, § 13.................................................................................3

# ARGUMENT

I. **As a matter of law, the bankruptcy court did not err in concluding that all of Humphrey's state court appellate rights were property of the estate under 11 U.S.C. § 541, as informed by Arkansas law.**

Relying on a rule of *statutory* and *constitutional* construction embraced by Arkansas courts, appellee LaDonna Humphrey contends that a definition of "things in action" cited by the Arkansas Supreme Court necessarily does not include rights of legal redress that cannot result in the recovery of damages. But Humphrey cites no cases in which the Arkansas appellate courts have applied *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another") to interpret the meaning of their earlier *opinions*. *Cf. Gazaway v. Greene Cty Equalization Bd.*, 314 Ark. 569, 575, 864 S.W.2d 233, 236 (1993) ("The phrase *expressio unius est exclusio alterius* is a fundamental rule of statutory construction.")

Instead, when not called upon to vacate or overrule an earlier decision, the Arkansas Supreme Court has freely explained, extended, or clarified its prior holdings as it deems necessary, and without ruling out interpretations not expressly rejected previously. *See, e.g., Pruitt v.*

1

*State*, 8 Ark. App. 350, 357, 652 S.W.2d 51, 55 (1983) (pointing out that Arkansas Supreme Court decision had "clarified" prior decisions).

Without an Arkansas holding squarely on point—and in light of the impropriety of applying rules of statutory construction to the state supreme court's prior opinions—this Court is left to determine as a matter of first impression whether Arkansas's definition of "property" includes the right to seek legal relief other than a money judgment. And there are reasons to believe the definition of "choses in action" set forth more than 50 years ago in *Gregory v. Colvin*, 235 Ark. 1007, 1008, 363 S.W.2d 539, 540 (1963), is not the final word on what legal rights constitute property. While stating that '[t][he right to sue for damages is property," *id.*, the court did not indicate that other rights to legal redress are *not* property under Arkansas law.

Consider, for instance, the right to sue for injunctive relief—which arises in Arkansas only when damages are unavailable or inadequate. *See, e.g., Compute-A-Call v. Tolleson*, 285 Ark. 355, 356, 687 S.W.2d 129, 130 (1985) (Irreparable harm necessary for injunctive relief occurs only when injury cannot be adequately compensated by money damages). An injunction does not necessarily fall within *Gregory v.*

2

Appellate Case: 24-1854    Page: 6    Date Filed: 11/14/2024 Entry ID: 5456785

*Colvin's* narrow definition of "a right to recover a debt or money . . . or a right to recover a personal chattel or a sum of money by action." 235 Ark. at 1008, 363 S.W.2d at 540. Yet, a court applying Humphrey's suggested rule of statutory construction to caselaw would have to find that the Arkansas Supreme Court has held that a legal right to seek an injunction is not a chose in action. The same analysis would apply to a right to seek a declaratory judgment, *see* Ark. Code Ann. § 16-111-101 *et seq.*, or the right under the Arkansas constitution to file an action seeking to foreclose the illegal exaction of taxes by a governmental entity. *See, e.g., Worth v. City of Rogers*, 351 Ark 183, 192, 89 S.W.3d 875, 880 (2002) (citing Ark. Const. Art. 16, § 13 as granting right to prevent unlawful expenditure of funds).

The better course is to look closely at the source of *Gregory v. Colvin's* reference to the right to recover damages as property. In defining a chose in action, the Arkansas Supreme Court quoted, and then cited, the then-current version of the legal encyclopedia *Corpus Juris Secondum*. But the current version of that authority acknowledges that "[a] vested defense to an action is also considered to

3239577-v1

Appellate Case: 24-1854     Page: 7     Date Filed: 11/14/2024 Entry ID: 5456785

be property." 73 *CJS* Property § 12, *Choses in Action* (May 2024 Update, available on Westlaw).

The Arkansas Supreme Court plainly has not decided what rights to relief other than claims for damages constitute choses in action. When the Arkansas Supreme Court has not decided an issue, this Court must attempt to predict how that state high court would resolve the issue. *Curtis Lbr. Co., Inc. v. Louisiana Pac. Corp.* 618 F.3d 762, 771 (8th Cir. 2010). While Arkansas has not decided whether defensive appeal rights are property, its high court's reliance on the legal encyclopedia *Corpus Juris Secondum* suggests that it would adopt that authority's definition of choses in action, which now includes vested defensive rights.

There is another reason why Humphrey's present distinction between offensive and defensive appellate rights is not dispositive in this Court. Humphrey did not offer this argument for the bankruptcy court's consideration. Instead, while conceding that appellate rights are property, Humphrey argued that she should not be left defenseless as to her fundamental right to challenge the striking of her answer and her

4

constitutional right to trial by jury on damages in state court. **App. 229-231; BK. R. Doc 29, at 37-39**.

Appellate courts normally do not consider issues raised for the first time on appeal. While there may be no deficiency in the trial court's record when the appellate issue is purely legal, as in this case, there is still an "inherent injustice" in allowing an appellant to bring up new issues after the case has been decided. *Von Kerssenbrock Praschma v. Saunders*, 121 F.3d 373, 376 (8th Cir.1997). Here, it seems particularly inappropriate to hold that Bankruptcy Court Judge Ben Barry erred by not considering an argument that was not before him.

Next, Humphrey chides appellants for citing "no case law, no court rules, no statutes, nothing" in support of the proposition that her appeal (filed with the Arkansas Court of Appeals and docketed as one appellate proceeding, No. CV-20-33) cannot be split into separate appeals—one subject to dismissal and one not. *Brief of Appellee* at 12. Ironically, Humphrey herself offers almost no authority for a contrary argument—that such a division can be accomplished under Arkansas appellate rules. Certainly, the rule cited by Humphrey that authorizes *consolidation* of appeals does not support the argument that an appeal

5

from one judgment brought about by one notice of appeal can be separated into two appellate proceedings.

Humphrey is likewise incorrect in arguing that there are no legal, procedural, or practical problems with allowing her to pursue her defensive appeal while abandoning any appeal related to her counterclaim. *Brief of Appellee* at 15. Humphrey conceded before the bankruptcy court that the appeal as to her state court counterclaim was property of the estate. Accordingly, that issue on appeal is not Humphrey's to "abandon." Absent dismissal of a separate appeal in state court, a good-faith purchaser of the counterclaim issue would have no means to ensure that Humphrey would not raise that very issue before the Arkansas Court of Appeals.

Appellants next turn to the arguments made in the brief filed by *amici curiae* National Association of Consumer Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center. *Amici curiae* dispute whether defensive appellate rights are property of the estate under Arkansas law, but add that "two determinations" are necessary to resolve the issue of property of the estate. *Brief of Amici Curiae* at 5 (citing *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis*

6

3239577-v1

Appellate Case: 24-1854   Page: 10   Date Filed: 11/14/2024 Entry ID: 5456785

*(In re N.S. Garrott & Sons)*, 772 F.2d 462 (8th Cir. 1985)). Once a determination is made regarding whether something is property under state law, "federal bankruptcy law dictates to what extent that interest is property of the estate." *Brief of Amici Curiae* at 5 (quoting *N.S. Garrott & Sons*, 772 F.2d at 466).

*Amici's* point as to a second property determination may be well taken, but federal courts are not free to apply any caselaw or analysis they choose in deciding what "federal bankruptcy law" dictates. Rather, the court must be guided by the Code itself, which provides as follows in pertinent part:

> "Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. 541(a)(1).

Thus, in making the "second" determination, the court need only decide whether the asset at issue is a "legal or equitable interest[ ] of the debtor in property." Section 541(a)(1) makes that determination, like the first one, turn on state law.

7

*Amici curiae* claim, however, that certain considerations that influenced Congress in enacting the Code should be weighed as well. They point to the intent to give debtors a chance at a "fresh start," by providing "a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and 'enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressures and discouragement of preexisting debt.'" *Brief of Amici Curiae* at 11-12 (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)) (quoted case omitted).

The problem with *amici curiae*'s argument is that Humphrey is not one of the "certain insolvent debtors" for whom Congress envisioned a "fresh start." Congress chose to exclude from discharge under the Code those debts arising from "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). While *amici curiae* argue that Humphrey "has not been found guilty of fraud," *Brief of Amici Curiae* at 12, they ignore that fact that the state court found that Humphrey "authored and sent anonymous and spoof emails, text messages, and communications . . . knowing that the content of her emails were false and with the specific intent to cause injury to

8

3239577-v1

Appellate Case: 24-1854    Page: 12    Date Filed: 11/14/2024 Entry ID: 5456785

Plaintiffs." **App. 182**.[1] The state court also found that Humphrey deliberately sent spoof communications to clients, partners, and referral sources of the plaintiffs, and "willfully and maliciously intended to cause injury to Plaintiffs."

It was these and other findings that prompted Bankruptcy Judge Richard Taylor, citing 11 U.S.C. § 523(a)(6), to grant summary judgment in an adversary proceeding filed to determine whether Humphrey's state court debt was dischargeable. *See In re LaDonna Humphrey*, 5:19-ap-07070, order, (Bankr. W.D. Ark, Feb. 21, 2024). Accordingly, a*mici curiae*'s argument that Humphrey was not guilty of fraud is meaningless, as is their assertion that it would be unfair to deny Humphrey a fresh start.

Moreover, the suggestion that an adversary of some future debtor might buy defensive appeal rights in a divorce, custody, or criminal case is not before this Court. What is involved here is an appeal from a

---

[1] The judgment by the Circuit Court of Benton County, Arkansas, was entered into evidence as Trustee's Exhibit 14 at the hearing on the motion for approval of sale, and is therefore included in Appellants' Separate Appendix, but was not entered or recorded in the bankruptcy court's docket.

9

3239577-v1

money judgment. The Court can certainly limit its holding to those facts.

## II. The Bankruptcy Court did not abuse its discretion in concluding that the sale of state court appellate rights was in the best interests of the estate.

Humphrey adopts the district court's analysis in this case, which declined to decide whether defensive appellate rights are property under Arkansas law, and instead resolved the case on the basis that the bankruptcy court abused its discretion by deciding that the sale of all appellate rights was in the best interests of the estate.

The bankruptcy court invoked the "business judgment rule" in evaluating the trustee's decision to obtain some funds for the estate in exchange for conveying the right to appeal in state court (subject to an abuse of discretion standard of review) from a judgment based on significant factual findings against Humphrey. **App. 239-245; Bankr. R. Doc 29, at 47-53.** At the same time, the trustee characterized the state court order that Humphrey sought to appeal as "terrible," noting that it rested in part on finding of "active and aggressive" spoliation of evidence. **App. 234; Bankr. R. Doc. 29, at 42**. The trustee operated within the realm of sound business judgment in concluding that it was

10

3239577-v1

best to sell Humphrey's right to an appeal that was all but certain to be futile.

### III. The finality rule of 11 U.S.C. § 363(m) barred any appellate challenge to the sale of estate property where the debtor failed to obtain a stay of the bankruptcy court order and the sale was consummated before any appeal could be decided.

The district court, Humphrey, and *amici curiae* all make the same mistake in responding to appellants' argument about the finality rule. *See* 11 U.S.C. § 363(m). They all assume that an appeal from a bankruptcy court sale order can go forward if there is a stay concerning estate property entered in some *other* proceeding, or in some *other* court. That is not what the statute says. Instead, it provides that, following authorization of a sale or lease by the bankruptcy court, the validity of the sale or lease is unaffected by an appeal "unless *such* authorization and *such* sale or lease were stayed pending appeal." Where is the stay of such bankruptcy order authorizing the sale of property in this case? Where is the stay of such sale in this case?

There were no such stays. Period. As this Court has noted, "[b]ankruptcy is a creature of statute," and "the starting point for interpreting a statute is the language of the statute itself." *In re*

11

*Windsor on the River Associates, Ltd.*, 7 F.3d 127, 130 (8th Cir. 1993). There is no interpretation of Section 363(m) under which the requirement of a stay of "such" authorization and "such" sale can be satisfied by a stay of proceedings that have nothing to do with the sale of estate assets—entered in a state court that has nothing to do with the bankruptcy court's authorization of the sale.

Therefore, it makes no difference that Humphrey's appeal to the Arkansas Court of Appeals has been stayed, or that the order authorizing the sale conceivably can be undone in time for Humphrey to pursue her appeal. There is no reason to doubt that Section 363(m) means exactly what it says; nor is there reason to disbelieve that it was adopted to maximize the value of estate property in a sale by assuring good-faith purchasers that the sale won't be undone months or years later. *See, e.g., International Union, United Auto, Aerospace & Ag. Implement Workers v. Morse Tool, Inc.*, 85 B.R. 666, 667 (D. Mass. 1988) (citing references to legislative history).[2]

---

[2] Because the only reasonable interpretation of Section 363(m) is to nullify an appeal from an authorization to sell unless such authorization or the ensuing sale has been stayed, *amici curiae*'s reference to *MOAC Mall Holdings L.L.C. v. Transform Holdco L.L.C.*, 598 U.S. 288 (2023), is puzzling. Appellants have not argued here that there was a jurisdictional

12

3239577-v1

Appellate Case: 24-1854   Page: 16   Date Filed: 11/14/2024   Entry ID: 5456785

For this reason, should this Court wish to avoid deciding an issue of first impression under Arkansas law, or should it be disinclined to rule on whether the bankruptcy court abused its discretion by approving the sale, it can resolve this case by application of the express language of a statute.

## CONCLUSION

For all the reasons set forth in appellants' opening brief and this reply brief, the Court should vacate and reverse the district court's judgment and order, and reinstate the bankruptcy court's decision.

---

bar to Humphrey's appeal to district court, only that the statute forbids her from obtaining the relief she achieved in district court.

13

Respectfully submitted:

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
tprice@wlj.com


By  Troy A. Price
 Charles T. Coleman (80030)
 Glenn S. Ritter (2011146)
 Troy A. Price (88010)

 *Attorneys for Absolute Pediatric*
 *Therapy and Anthony Christopher*

14

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit requirements of Fed. R. App. P. 32(a)(7)(B) because, exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 3,115 words. This certificate was prepared in reliance on the word count of the word processing system (Microsoft Word 2019) used to prepare this brief.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

3. The undersigned further certifies that the electronic version of this brief has been scanned for viruses and is virus-free.


By  Troy A. Price
    Troy A. Price

15

3239577-v1

Appellate Case: 24-1854    Page: 19    Date Filed: 11/14/2024 Entry ID: 5456785

## **CERTIFICATE OF SERVICE**

On November 11, 2024, this brief was electronically submitted to the Court, which shall serve notification of the submission on all parties of record, and upon approval and filing of this brief, a paper copy will be served by U.S. Mail on counsel for the appellee and counsel for *amici curiae* on November ___, 2024.

<u>Troy A. Price</u>
Troy A. Price
